**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 13-cv-03385-MSK

**DANNY R. FERNANDEZ,**

   Plaintiff,

v.

**CAROLYN W. COLVIN, Acting Commissioner of Social Security,**

   Defendant.

## OPINION, ORDER AND JUDGMENT AFFIRMING DECISION OF THE COMMISSIONER

This matter is before the Court on a Complaint for review of a decision of the Commissioner of Social Security (Decision) that denied certain benefits to the Plaintiff, Mr. Fernandez. The Court has considered the record, the briefs filed by the parties, and oral arguments. For the reasons stated below, the Court **AFFIRMS** the Decision of the Commissioner.

### I.  Jurisdiction

It is undisputed that this matter was timely brought following a final determination of the Commissioner. Accordingly, the Court exercises jurisdiction pursuant to 42 U.S.C. §404(g).

### II.  Procedural History

The procedural history with regard to Mr. Fernandez's application for Social Security Disability Insurance (SSDI) benefits is long and tortuous. He first applied for SSDI benefits in 1994 for disability resulting from impairments to his right knee, left shoulder, and low back. At that time, he had undergone several surgeries on his knee as well as one on his shoulder, and he

1

was unable to perform his past relevant work as a warehouse laborer.  The ALJ who considered his application rendered an unfavorable decision, the Appeals Council denied review, and Mr. Fernandez appealed to this Court.  Judge Walker D. Miller reversed the Commissioner's decision and remanded for consideration of a functional capacity evaluation obtained after the decision and evidence of mental impairment.

A second hearing was held on April 18, 2002.  This also resulted in an unfavorable decision.  The Appeals Council found no reason to assume jurisdiction, and again, Mr. Fernandez sought review in this Court.  The Commissioner's decision was reversed again because it did not reflect consideration of the evidence identified by Judge Miller in his order of reversal and remand.

A third hearing was held on February 8, 2006.  Again, an unfavorable decision resulted.  Again, the Appeals Council found no reason to review the ALJ's determination, and Mr. Fernandez appealed to this Court.  Again, the decision was reversed and the matter remanded because the decision did not demonstrate that the ALJ had considered the functional capacity evaluation or applied the required legal standards in evaluating physician opinions.

A fourth hearing was held on April 3, 2008.  Again, an unfavorable decision was issued.  The Appeals Council declined exercise of jurisdiction, and an appeal was again initiated in this Court.  Again, the determination was reversed and the matter remanded with specific instructions as to the facts deemed established, the scope of evidence to be considered, and the issues to be determined.

While his claim was on appeal, Mr. Fernandez filed an additional claim for Supplemental Security Income benefits (SSI).  The Appeals Council directed the ALJ to consider whether the SSI claim should be consolidated with the matter remanded.  The ALJ did so, and issued a

partially favorable and partially unfavorable determination. With regard to the SSI claim, the ALJ determined that Mr. Fernandez had been disabled from and after February 25, 2010, the date the application was made. There is no dispute as to that determination.

But as to the 1994 claim, the ALJ found that Mr. Fernandez had not been disabled at any time from March 13, 1996, the amended onset date, through December 31, 1996, his last date of insurance for purposes of SSDI benefits. Mr. Fernandez filed exceptions to the partial denial with the Appeals Council, but it declined jurisdiction to review or revise the Decision. Therefore the Decision became that of the Commissioner and is the subject of this action.

### III.  The Decision

Despite the long history of Mr. Fernandez's SSDI application, the issue addressed in the most recent Decision was very narrow — was Mr. Fernandez disabled during an approximately ten-month period from March 13, 1996 to December 31, 1996?

This question was further limited by the 2008 Remand Order. The Order provided that the 2008 findings at Steps 1-3[1] would be binding, that the ALJ's consideration would be limited to Step 4 and if necessary Step 5. The ALJ was instructed to accept the 2008 RFC as a description of Mr. Fernandez's physical abilities, and to determine whether it should be modified in light of Mr. Fernandez's subjective complaints — primarily, pain. If the RFC was modified, then the ALJ was to determine whether Mr. Fernandez could perform his past relevant work or was able to perform other jobs, in accordance with Step 4 and 5 parameters. To avoid

---

[1] At Step 1, the finding was that Mr. Fernandez was last insured on December 31, 1996 and he had no gainful employment from March 13, 1996 through December 31, 1996. At Step 2, the finding was that Mr. Fernandez had the following severe impairments — back pain, right knee instability, status post multiple surgeries, left shoulder instability, and depression. At Step 3, the finding was that none of these impairments either singly or in combination met or equaled any of the listed impairments.

presentation of evidence not pertinent to the applicable time period, the Court also limited the relevant evidence to that through December 1997 (one year past the pertinent period). The 2008 RFC provided that Mr. Fernandez could perform a range of sedentary work, could stand and walk for up to two hours in a regular eight–hour workday, sit without restriction, and drive a vehicle for one to three hours at a time, while only frequently reaching with upper extremities, avoiding repetitive use of his right lower extremity to operate foot controls, avoiding activities involving bending, squatting, kneeling, or climbing, and with moderate limitations in his ability to understand, remember, and carry out detailed instructions or to maintain concentration and attention to tasks for extended periods. The ALJ found that from March 13 to December 31, 1996, Mr. Fernandez's impairments caused him pain, but the pain he experienced was not disabling, and that it did not require modification to the 2008 RFC determination.

Finding no change in the 2008 RFC determination, the ALJ relied on the VE testimony presented at the 2008 hearing, and found that although Mr. Fernandez could not perform his past relevant work, there were jobs in significant numbers in the national economy that he could have performed.

### IV.  Material Facts

In the Remand Order, the ALJ was directed to limit the evidence considered to that before December 1997 (one year after the expiration of Mr. Fernandez's insured status).  Subject to that limitation, the pertinent facts are as follows.

#### A. *Left Shoulder*

Mr. Fernandez injured his left shoulder in December 1990 and underwent surgical repair by orthopedist Stewart K. Weinerman, M.D. in June 1991.  In October 1991, Dr. Weinerman found Mr. Fernandez was at maximum medical improvement with good range of motion,

excellent stability, and excellent strength. As of February 1992, Mr. Fernandez exhibited no instability and excellent range of motion with only some limitation in rotation, and according to Dr. Weinerman, could do all activities, but needed to be careful with heavy lifting and overhead activities with the left arm .

### B.  *Right Knee*

Between 1991 and 1997, Mr. Fernandez had four surgeries on his right knee, the last three to address continuing problems with instability and pain. In 1991, C. Keith Fujisaki, M.D., performed anterior cruciate ligament (ACL) reconstruction surgery, and by February 1992, Dr. Fujisaki concluded that Mr. Fernandez could perform work activity with limited lifting, squatting, and kneeling.

The second surgery (arthroscopic ACL revision) was performed by Dr. Weinerman in May 1993 due to instability.  At a July 1993 follow-up six weeks post-surgery, Dr. Weinerman reported that Mr. Fernandez was doing well and had progressed to weight-bearing on his own.

Mr. Fernandez's knee remained unstable, and another arthroscopic ACL reconstruction surgery was performed by Dr. Weinerman in late May 1994. Four months post-surgery, Mr. Fernandez was released to do more weightlifting, ambulating, and bicycling At follow-ups with Dr. Weinerman in October 1994, November 1994, January 1995, and February 1995, Mr. Fernandez reported some instability in his right knee, which required him to wear a knee brace routinely.

Instability returned (along with pain), and yet another surgery was performed by Dr. Weinerman in November 1996. Both Dr. Weinerman and Mr. Fernandez felt that his knee was more stable. In March 1997, Dr. Weinerman completed a physical capacity assessment in which he found that Mr. Fernandez was capable of performing a range of sedentary work — Mr.

5

Fernandez could lift up to ten pounds maximum; had no restrictions on sitting; could stand/walk up to two hours at one time, and up to two hours total during the day; could drive one-three hours at one time; had no manipulative restrictions; had no restrictions in bending, squatting, kneeling, and climbing; and could frequently reach. Later that year, the assessment was revised to limit Mr. Fernandez to "sedentary or "light duty" work due to reports of aching and pain with moderate instability.

### C. Low Back

In 1992, Mr. Fernandez was treated by chiropractor Peter So for complaints of intermittent low back pain. Dr. So reported in October 1994 that Mr. Fernandez's low back pain was reduced approximately 60-70 percent.

### D. Complaints of Pain

In his 1994 personal pain questionnaire, Mr. Fernandez reported aching, sharp, dull, throbbing pain in his left shoulder with swelling pain in his right knee that worsened with exercise, cold weather, and movement. He said that his pain was constant, occurring every hour, every day, every week. He indicated that he was not taking medication but did use Icy Hot sports cream, hot baths, ice packs, etc. He said that the pain limited his activities and that it had restricted his ability to perform weight lifting and physical sports.

In his 1994 daily activities questionnaire, Mr. Fernandez reported that he could not do every sport that he liked (water ski, play racquetball, football, tennis, or basketball, or roller skate) because of his left shoulder and right knee, but he was able to ride a bike and hike with his dog. He could make a bed, clean, vacuum, mow the lawn, pick up after the dog, fish, shoot guns, and played pool. He prepared meals, paid bills, drove a car, and visited with friends and family "all the time."

Mr. Fernandez testified at the February 1996 hearing that he experienced level "7" pain in his right knee most of the time. The pain he experienced in his left shoulder and arm was level "7," but sometimes it was level "10." In addition, he had level "6" or "7" pain in his lower back. He took medication, but it didn't relieve his pain. He used a brace on his knee, used Icy Hot and other gels, and "did physical therapy on his own," either by riding a bike or doing a lot of walking (regularly one to two miles). He also testified that he spent most of the day lying down or sitting, did not help his mother with household chores, but did rake and perform other yard work. He said that he could stand for only 10-15 minutes before having to sit, could sit for 2 hours before he had to stand. When driving, he stopped every hour. He did no shopping and only a little cooking, no cleaning, but did mow the yard. He went pheasant hunting and rode his bike, walked the dogs for a couple of hours and shot pool.

### E. *Other Assessments*

David Crosson, M.D., examined Mr. Fernandez in September 1994, at the request of the State agency. Mr. Fernandez reported an ability to do all activities of daily living, and an ability to lift 20 to 25 pounds. He had a mildly antalgic gait while wearing a brace for his right knee. He had 1½ inches of quadriceps atrophy of the right leg compared to the left, and his right knee was fairly unstable, but his lower extremities had no deficits in motor power, reflexes, or sensation. Mr. Fernandez had no pain to palpation in his lumbar spine, only minor pain at the extremes of range of motion testing, and a negative straight leg raising test. Mr. Fernandez exhibited only mild tenderness in his left shoulder, with full range of motion and only minimal crepitus and no evidence of measurable atrophy in the upper extremities. Also, x-rays of Mr. Fernandez's left shoulder were within normal limits. Dr. Crosson found that Mr. Fernandez had no disc disease or arthritis. Dr. Crosson concluded that, while Mr. Fernandez had an unstable

right knee, he could "get around quite nicely" with a knee brace, and was capable of performing sedentary work.

In March 1996 (close to the time of Mr. Fernandez's amended alleged onset of disability), physical therapist Jolene Daulton completed a "functional capacity work readiness" test. Ms. Daulton found that Mr. Fernandez was capable of medium-level lifting below the waist and sedentary-level lifting above the waist, that due to his knee impairment, Mr. Fernandez was limited to walking 15-30 minutes at a time, standing 15-30 minutes at a time, occasional climbing stairs and ladders, no full kneeling, occasional kneeling on the left knee, no crawling, occasional squatting and crouching, and occasional bending. Due to his shoulder impairment, Mr. Fernandez was limited in his ability to reach overhead. In addition, Mr. Fernandez was limited to sitting one hour at a time.

### V. Analysis

#### A. Standard of Review

In Social Security appeals, the Court's review is limited. It may only consider whether the Decision is supported by substantial evidence and whether the correct legal standards were applied. *Doyal v. Barnhart,* 331 F.3d 758 (10th Cir. 2003); *Bernal v. Bowen*, 851 F.2d 297 (10th Cir. 1988). It may not examine the issues *de novo,* reweigh the evidence, or substitute its judgment for that of the Commissioner. *Sisco v. United States Dept. of Health and Human Services,* 10 F.3d 739 (10th Cir. 1993); *White v. Barnhart,* 287 F.3d 903 (10th Cir. 2001); *Qualls v. Apfel,* 206 F.3d 1368 (10th Cir. 2000).

#### B. Step 4

There is no dispute that the ALJ applied the correct legal standard in accordance with the Remand Order. Applying the tests of *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), and *Kepler*

*v. Chater*, 68 F.3d 387 (10th Cir. 1995),[2] the ALJ expressly found that Mr. Fernandez had impairments and experienced pain in his left shoulder and right knee related to the impairments. After considering both objective and subjective evidence in the record, however, the ALJ found that Mr. Fernandez's shoulder and knee pain[3] during 1996 was not disabling and that no modification of the RFC was required.

Mr. Fernandez argues that this finding is not supported by substantial evidence. Specifically, he contends that: (1) the ALJ considered medical evidence from before December 1996 through 1997, but improperly failed to consider his testimony at hearings in 2002, 2006, or 2008; (2) the ALJ did not fully discuss all of the medical treatment records for 1991, 1992, and 1993 that refer to pain, and misrepresented the contents of some medical records; and (3) in assessing his credibility, the ALJ did not properly consider his medical records and engaged in improper speculation that the orthopedists considered his pain when they made functional capacity assessments. Careful review of the record and the Decision lead the Court to conclude that none of these contentions constitute error requiring reversal.

In addressing Mr. Fernandez's challenges, the Court is guided by several general legal standards. First, pain does not necessarily create a disability. "[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." *Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986). This requires a factual finding that must be

---

[2] The teachings of *Luna* and *Kepler* require answers to three questions: (1) whether the plaintiff established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the plaintiff's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, the plaintiff's pain is in fact disabling. *Kepler*, 68 F.3d at 390.

[3] The Decision does not directly address Mr. Fernandez's back pain in the context of an established impairment, but Mr. Fernandez makes no objection with regard to the ALJ's ultimate findings with regard to his back pain.

supported by substantial evidence. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Soliz v. Chater*, 82 F.3d 373, 375 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is more than a scintilla, but less than a preponderance. *Perales*, 402 U.S. at 401. Simply because the evidence in the record is subject to more than one interpretation does not mean that the findings are not supported by substantial evidence. However, if the weight of the evidence points in only one direction, a finding to the contrary is not supported by the weight of the evidence.

Second, to determine the effect of pain, the ALJ must consider both objective (medical) evidence and subjective evidence (statements from Mr. Fernandez). In considering Mr. Fernandez's statements, the ALJ must assess their credibility. This requires consideration of Mr. Fernandez's medical records, daily activities, location, the duration, frequency, and intensity of his pain, its treatment, his medication, and other factors that include consideration of his medical treatment history. *See* 20 C.F.R. § 404.1529; *see also* SSR 96-7p. It also includes consideration of any conflicts between Mr. Fernandez's statements and the rest of the evidence of record. *See* 20 C.F.R. §§ 404.1529(c)(4). The Court gives great deference to credibility findings by the ALJ. However, they must be "closely and affirmatively linked to substantial record evidence." *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009).

Moving through Mr. Fernandez's challenges seriatim, the Court begins with the argument that the ALJ should not have limited himself only to evidence through 1997. The ALJ cannot be faulted for limiting his review to evidence from that time period because he was instructed to do so in the Remand Order. With regard to Mr. Fernandez's testimony about the pain he experienced in 1996, there is no evidentiary support for the proposition that testimony

10

given in in 2002, 2006, or 2008 was more accurate than testimony given contemporaneously in 1996.

Mr. Fernandez's second and third arguments both relate to medical treatment records. First, he argues that the ALJ did not consider all of the medical records because he did not discuss every record that included a reference to "pain," and his conclusions that Mr. Fernandez did not complain about pain are not entirely accurate. As examples, Mr. Fernandez points to a limited number of records that contain the word "pain." Although the ALJ did not discuss the identified records, they were not contrary to his findings that Mr. Fernandez suffered from pain in his back, shoulder, and his knee, particularly in the context of its continued instability, and that the pain was related by a loose nexus to his impairments. The ALJ's statement that "[Mr. Fernandez] did not report pain" is arguably inaccurate or too general, but like the identified records, it did not prevent a finding that Mr. Fernandez suffered pain related to his impairments. Neither the failure to address the identified records nor the overstatement/inaccuracy in the statement as to whether Mr. Fernandez' complained of pain constitutes error requiring reversal with regard to the first two steps of the *Luna* and *Kepler* analysis.

With regard to the third step in the *Luna* and *Kepler* analysis, Mr. Fernandez argues that 1) the identified records were not properly considered in assessing the credibility of his statements as to the severity, intensity, and persistence of his pain; and 2) that the ALJ improperly speculated that his orthopedists considered his pain in determining his functional capacity.[4] The Court finds no reversible error for either reason.

---

[4] When the evidence in the record is considered, these arguments become inconsistent. The medical records that Mr. Fernandez contends were not, but should have been, considered are treatment notes by his orthopedists that contain references to "pain." He argues that the ALJ should have specifically noted those references, but at the same time he argues that the ALJ could not assume that the orthopedist who made such records would have considered Mr. Fernandez's pain as reflected in them when the orthopedist opined as to Mr. Fernandez's

The Decision contains an extensive review of Mr. Fernandez's medical records covering the time period of 1994 through 1997. With regard to Mr. Fernandez's knee, the ALJ carefully reviewed, recited, and summarized records of multiple surgeries to address continued instability. He noted that each time, Mr. Fernandez experienced pain leading up to and following surgery, then experienced a good recovery with significant function restored. Unfortunately, the instability returned, bringing with it pain. During the ten month period at issue, Dr. Weinerman observed instability (and pain), performed a "Clancy procedure" ACL reconstruction surgery and by November 1996, observed that the knee was far more stable. Ultimately, Dr. Weinerman opined in 1997 that Mr. Fernandez could return to work at a sedentary level of exertion, lift 10 pounds maximum, and occasionally lift and/or carry dockets, ledgers, and small tools. He could stand/walk for 0-2 hours at one time, and 0-2 hours total during the day, could sit without restriction, and could drive a car/truck for 1-3 hours at one time. He had no restrictions in the use of his hands for repetitive actions, and had no restrictions in the use of his left leg for repetitive movement, as in operating foot controls, and could use his right leg for repetitive movement. He could frequently reach, but could not bend, squat, kneel, or climb.

With regard to his shoulder, Mr. Fernandez's records show repair in 1991 by Dr. Weinerman, with no further treatment. Indeed, as of late 1991, Dr. Weinerman found that Mr. Fernandez had no instability, excellent strength and range of motion. In 1994, when examined by Dr. Crosson, Mr. Fernandez had only mild tenderness in his left shoulder, full range of motion, and no evidence of measurable atrophy. In March 1997, one year after Mr. Fernandez's amended alleged onset date, the only limitation Dr. Weinerman assessed due to Mr. Fernandez's left shoulder impairment was a restriction to frequent reaching.

---

physical abilities.

Although the Decision might have included more examples from Mr. Fernandez's medical records, the ALJ's credibility assessment is linked to substantial evidence in the record, and the incidental references to "pain" in various medical records do not constitute such overwhelming evidence to upset the determination.

Mr. Fernandez also objects to the ALJ's assumption that with regard to functional capacity assessments, his doctors "would have factored in any pain complaints made by the claimant into their assessments," and thus "their findings do not support a conclusion that the claimant's subjective complaints of pain were disabling and precluded all work." If there is error, it is in the first statement — that Mr. Fernandez's doctors would have factored pain complaints into the assessments. One cannot know with absolute certainty whether a doctor considered pain in his assessment without inquiring of the doctor. But, it is fair to say that Mr. Fernandez's orthopedic physicians noted his pain in their records and performed surgeries, in part, to address it. Thus, such physicians were presumptively familiar with all of Mr. Fernandez's signs and symptoms, and imposed limitations in accordance with his capabilities.

The ALJ also considered Mr. Fernandez's own statements. He noted that although Mr. Fernandez had knee and shoulder pain both before and during the period of review, he nevertheless enjoyed an active lifestyle — he fished, played guitar, shot guns, used slingshots, regularly visited family and friends, drove back and forth to Denver, as well as preparing simple meals, cleaning, doing yard work, walking his dog, and riding a bicycle. Indeed, in February 1996, a month before the onset date, he reported that he went pheasant hunting, rode his bicycle, played pool, and shot pistols.

Having carefully reviewed the record and the Decision, the Court is satisfied that the ALJ's findings are supported by substantial evidence, and his credibility determination was

13

"closely and affirmatively linked to substantial record evidence." *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009).

### C. Step 5

Having determined that it was not necessary to modify the 2008 RFC (which determined Mr. Fernandez's condition in 1996), the ALJ also relied upon the testimony by the VE in 2008 as to the availability of jobs that Mr. Fernandez could have performed during the operative time period. The VE testified that a person with such RFC could perform the jobs of small products assembly and electronics worker, which were light exertion jobs that did not require more than two hours of walking in an eight-hour day or lifting of more than ten pounds. Even with some erosion in the numbers of jobs due to the specific limitations in the RFC, there would remain 2,700 assembler positions in Colorado and 300,000 jobs nationally, and 2,200 electronics worker jobs in Colorado and 190,000 jobs nationally. He further testified that sedentary positions were also available in significant number. For example, an order clerk position, with 313 jobs in Colorado and 17,900 jobs nationally.

Mr. Fernandez contends that it was error for the ALJ to rely on the VE testimony at the 2008 hearing. He contends that instead, the ALJ should have considered the testimony of the VE at the 2011 hearing. The Court finds no error.

The 2011 RFC addressed Mr. Fernandez's condition as of February 25, 2010, more than 14 years after the time period at issue on remand. There is no argument or evidence that Mr. Fernandez's condition in 1996 was the same as that determined in 2010. Mr. Fernandez's condition in 1996 was comprehensively determined in 2008, and the 2008 RFC was binding on remand, subject to any modification that the ALJ found necessary due to Mr. Fernandez's pain.

Finding no modification was necessary, it was proper for the ALJ to rely upon the VE testimony at the 2008 hearing.

## VI.  Conclusion

Finding no reversible error in the Commissioner's Decision, it is adjudged and decreed that the Decision denying benefits for the time period March 13, 1996 through December 31, 1996 is **AFFIRMED**.

Dated this 19th day of August, 2015.

                                          **BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
Chief United States District Judge